IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS



SOUTHERN DISTRICT OF TEXAS
FILED

MAR -8 2002

MICHAEL N. MILBY, CLERK

| | |
|---|---|
| Williams Wholesalers, Ltd., ) <br> Williams Distributing Co., Inc., ) <br> Durrill and Williams, Inc., ) <br> William R. Durrill, ) <br> Derrest N. Williams, Jr., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> Anheuser-Busch, Inc., ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No. ___ C-02-091 <br> Jury Trial Demanded |

## COMPLAINT

Plaintiffs Williams Wholesalers, Ltd.; Williams Distributing Co., Inc.; Durrill and Williams, Inc.; William R. Durrill; and Derrest N. Williams, Jr. (hereinafter collectively "Durrill and Williams") complain against Defendant Anheuser-Busch, Inc. and allege as follows:

### Introduction

1.     This action arises from Anheuser-Busch's patently unreasonable and illegal refusal to approve the sale of Durrill and Williams' Budweiser distributorship. In October 2000, Durrill and Williams agreed to sell the distributorship they had successfully operated in Nueces, San Patricio and Aransas counties for over 40 years to a willing buyer, L& F Distributors, Inc. ("L&F"), which then served as the Budweiser Distributor for neighboring South Texas counties. L&F agreed to pay $57 million dollars to Durrill and Williams for the distributorship. Durrill and Williams' distributorship contract with Anheuser-Busch and applicable Texas law required Anheuser-Busch to

\.

approve any reasonable sale of the distributorship. Despite that legal and contractual obligation, Anheuser-Busch unreasonably rejected the sale in February 2001, claiming that the purchase price was too high and would leave L&F – a seasoned and profitable Budweiser distributor with a $123 million line of credit – undercapitalized and unable to carry on the business. As a result of Anheuser-Busch's unwarranted rejection of Durrill and Williams' agreement to sell the distributorship to L&F, Durrill and Williams were forced by Anheuser-Busch to negotiate a second sale to L&F at a purchase price $5.5 million lower than that originally agreed upon. Anheuser-Busch's unreasonable rejection of the sale from Williams and Durrill to L&F violated the Texas Beer Industry Fair Dealing Law, the distribution contract Durrill and Williams had with Anheuser-Busch, and Anheuser-Busch's common law duty to refrain from tortiously interfering with the October 2000 asset purchase agreement between Durrill and Williams and L&F. Accordingly, Durrill and Williams seek redress in this action for Anheuser-Busch's illegal conduct.

Jurisdiction and Venue

2. This Court has jurisdiction over Durrill and Williams' claims pursuant to 28 U.S.C. §1332(a)(1). The amount in controversy in this action exceeds $75,000.

3. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Durrill and Williams' claims occurred in this district, and/or a substantial part of the property that is the subject of this case is situated in this district, and Anheuser Busch resides in this district. For purposes of state law, the Texas Beer Industry Fair Dealing Law, Alcoholic Beverage Code § 102.79, provides for venue in Nueces County.

## The Parties

4.      Plaintiff Williams Wholesalers, Ltd. is a limited partnership organized under the laws of Texas, and a "manufacturer" as that term is used and defined by the Texas Beer Industry Fair Dealing Law. Williams Wholesalers, Ltd. was party to the 1997 equity wholesalers agreement with Anheuser-Busch and the asset purchase agreements with L&F that underlie this action.

5.      Plaintiff Williams Distributing Co., Inc. is a Texas corporation with its principal place of business in Corpus Christi. It owns vehicles used by Williams Wholesalers, Ltd. and is a party to the asset purchase agreements with L&F.

6.      Plaintiff Durrill and Williams, Inc. is a Texas corporation with its principal place of business in Corpus Christi. It owns land and buildings used by Williams Wholesalers, Ltd. and is a party to the asset purchase agreements with L&F.

7.      Plaintiff Derrest N. Williams Jr. is a principal in the Plaintiff companies described above.

8.      Plaintiff William R. Durrill is a principal in the Plaintiff companies described above.

9.      Defendant Anheuser-Busch, a corporation based in St. Louis, Missouri, is a producer and seller of Budweiser, Bud Light, Busch and other beers, and claims to supply the leading brands of beer in every demographic and pricing segment – giving it nearly half of the beer market in the United States. Anheuser-Busch is a "manufacturer" as that term is used and defined by the Texas Beer Industry Fair Dealing Law, and was party to the 1997 distributorship contract with Williams and Durrill underlying this action.

Factual Allegations

10. Durrill and Williams have been Budweiser distributors since 1960. From then until 2001, they successfully and profitably served as the exclusive distributor of Budweiser in the Corpus Christi area.

11. Indeed, when Durrill and Williams acquired their Budweiser distributorship, it had the smallest market share of any beer distributor in the Corpus Christi area. By 2001, it enjoyed the largest.

12. Anheuser-Busch recognized the success of Durrill and Williams' distributorship over the years, as Durrill and Williams exceeded every Anheuser-Busch performance standard applicable to their distributorship.

13. In July 1997, Durrill and Williams and Anheuser-Busch entered into the exclusive distributorship contract that was valid and binding at all times relevant to this action. This contract was entitled "Wholesaler Equity Agreement."

14. The Wholesaler Equity Agreement provided that Durrill and Williams could not sell the distributorship without the prior approval of Anheuser-Busch, but specified that such approval "shall not be unreasonably withheld, subject to all of the requirements set forth in this Agreement."

15. The Wholesaler Equity Agreement set forth five factors Anheuser-Busch could consider in deciding whether to approve a sale, though these factors were not defined as exclusive: (1) the financial capability of the buyer; (2) the buyer's proven business experience, since, as the Wholesaler Equity Agreement provided, "[p]rior experience in the beer business is strongly preferred by Anheuser-Busch," (3) the character of the owner, (4) whether the buyer is already a Budweiser distributor who could devote sufficient time to

the additional market area, and whether the newly acquired territory would be contiguous to the existing territory; and (5) whether the buyer sells beer that competes with Budweiser.

16. The Wholesaler Equity Agreement also incorporated all applicable and superseding laws of Texas.

17. On October 19, 2000, Durrill and Williams entered into an a sales contract (the "October 19, 2000 Asset Purchase Agreement") with L&F to sell the distributorship for $57 million and additional, minor consideration.

18. Although the October 19, 2000 Asset Purchase Agreement was a binding and effective contract between Durrill and Williams and L&F, the ultimate sale of the distributorship was contingent on approval by Anheuser-Busch, as the October 19, 2000 Asset Purchase Agreement explicitly recognized.

19. At the time Durrill and Williams and L&F entered into the October 19, 2000 Asset Purchase Agreement, L&F served as the exclusive Budweiser distributor for several South Texas counties which are contiguous to the distribution territory exclusively assigned by Anheuser-Busch to Durrill and Williams.

20. At the time Durrill and Williams and L&F entered into the October 19, 2000 Asset Purchase Agreement, L&F's distributorship was and had been profitable and successful.

21. It is believed that L&F obtained a $123 million line of credit from Bank of America in order to complete its purchase of Durrill and Williams' distributorship.

22. After entering into the October 19, 2000 Asset Purchase Agreement with L&F, Durrill and Williams sought approval from Anheuser-Busch for the sale to L&F according to, and in compliance with, the terms of the Wholesaler Equity Agreement.

5

23. In response to Durrill and Williams' request for approval, Anheuser-Busch requested additional information from both Durrill and Williams and L&F, which both parties provided.

24. Anheuser-Busch then requested further information and documents from Durrill and Williams, which were again supplied.

25. In January 2001, Anheuser-Busch began suggesting in both written correspondence and in conversations with Durrill and Williams that Durrill and Williams alter their agreement with L&F to provide for a lower purchase price and a contingent payment structure whereby L&F might pay additional funds to Durrill and Williams in later years if L&F met revenue targets prescribed by Anheuser-Busch.

26. Nonetheless, Durrill and Williams, by letter dated January 30, 2001, asked Anheuser-Busch to formally approve or reject the sale of the distributorship to L&F as set forth in the terms of the October 19, 2000 Asset Purchase Agreement.

27. Anheuser-Busch responded in a letter dated February 1, 2001 rejecting Durrill and Williams' sale of their distributorship to L&F pursuant to the terms of the October 19, 2000 Asset Purchase Agreement.

28. In its February 1, 2001 rejection letter, Anheuser-Busch gave only one reason for disapproving the sale to L&F: that L&F would receive a low return on its investment, thus supposedly jeopardizing L&F's ability to fulfill its wholesale equity agreement with Anheuser-Busch and manage the newly acquired distributorship.

29. In reality, as was obvious at the time, the sale of Durrill and Williams' distributorship pursuant to the terms of the October 19, 2000 Asset Purchase Agreement would not have left L&F undercapitalized, led to a low return on L&F's investment, or

6

otherwise rendered L&F financially unsound or unable to fulfill the terms of any agreement with Anheuser-Busch.

30. As a proposed buyer of Durrill and Williams' distributorship, L&F plainly satisfied all of the criteria set forth in the Wholesaler Equity Agreement and any and all other reasonable standards regarding buyers of distributorships imposed by Anheuser-Busch on other distributors of the same general class.

31. Anheuser-Busch's rejection of the proposed sale to L&F forced Durrill and Williams to negotiate a second sale along the lines of the one suggested by Anheuser-Busch.

32. Accordingly, on February 6, 2001, Durrill and Williams entered into a second asset purchase agreement with L&F (the "February 6, 2001 Asset Purchase Agreement"). This new agreement required Durrill and Williams to sell their distributorship for $51.5 million – rather than $57 million -- and provides that L&F may pay further amounts up to $5.5 million to Durrill and Williams over 13 years if, and only if, L&F meets revenue targets dictated by Anheuser-Busch.

33. By letter dated February 8, 2001, Anheuser-Busch approved the sale of Durrill and Williams' distributorship according to the terms of the February 6, 2001 Asset Purchase Agreement.

34. Durrill and Williams have not received any additional payments from L&F under the February 6, 2001 Asset Purchase Agreement.

## Causes of Action

### Count I: Violation of the Texas Beer Industry Fair Dealing Law

35. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

36. Anheuser-Busch's withholding and/or delay of approval of Durrill and Williams' sale of their distributorship to L&F according to the terms of the October 19, 2000 Asset Purchase Agreement was unreasonable, and L&F met all reasonable standards imposed by Anheuser-Busch on other distributors of the same general class, taking into account the size and location of the sales territory and market to be served.

37. Accordingly, Anheuser-Busch violated the Texas Beer Industry Fair Dealing Law, Alcoholic Beverage Code § 102.76.

38. Anheuser-Busch's denial of approval of, and withholding of consent to, Durrill and Williams' sale of their distributorship to L&F according to the terms of the October 19, 2000 Asset Purchase Agreement was unlawful, unreasonable, and without good cause, as "good cause" is defined in the Texas Beer Industry Fair Dealing Law, Alcoholic Beverage Code § 102.71.

39. Accordingly, Anheuser-Busch violated the Texas Beer Industry Fair Dealing Law, Alcoholic Beverage Code §102.77.

40. The fair market value of Durrill and Williams' distributorship as of the date Anheuser-Busch violated the Texas Beer Industry Fair Dealing Law was at least the value of that consideration agreed to by L&F in the October 19, 2000 Asset Purchase Agreement and may, during the course of this action, be established to have been higher.

41. Anheuser-Busch's violations of the Texas Beer Industry Fair Dealing Law entitle Durrill and Williams to the fair market value of their distributorship as of the date Anheuser-Busch violated that law, pursuant to Alcoholic Beverage Code § 102.77, and/or such other relief, including attorneys' fees, as they are entitled to under the Texas Beer Industry Fair Dealing Law.

### Count II: Breach of Contract

42. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

43. The Wholesaler Equity Agreement was a valid contract between Durrill and Williams and Anheuser-Busch, and Durrill and Williams performed all necessary obligations thereunder.

44. The Wholesaler Equity Agreement provided that Anheuser-Busch would not unreasonably withhold approval of Durrill and Williams' sale of their distributorship.

45. Anheuser-Busch breached this provision of the Wholesaler Equity Agreement by unreasonably withholding approval of Durrill and Williams' sale of their distributorship to L&F according to the terms of the October 19, 2000 Asset Purchase Agreement.

46. To the degree that Anheuser-Busch also violated other provisions of Texas law, such violations were breaches of the Wholesaler Equity Agreement, which incorporated all applicable and superseding Texas laws.

47. Durrill and Williams have been damaged by Anheuser-Busch's breaches of the Wholesaler Equity Agreement and are therefore entitled to all applicable remedies for such breaches.

### Count III: Tortious Interference with Contract and/or Prospective Contractual Relations

48. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

49. Anheuser-Busch's disapproval of Durrill and Williams' sale of their distributorship to L&F according to the terms of the October 19, 2000 Asset Purchase Agreement deprived both parties to the October 19, 2000 Asset Purchase Agreement of the benefits of that contract. Such disapproval constituted interference with the October 19, 2000 Asset Purchase Agreement.

50. Anheuser-Busch's interference with the October 19, 2000 Asset Purchase Agreement and the contractual relationship between Durrill and Williams and L&F was intentional, willful, accomplished with a conscious desire to frustrate the contractual relationship between Durrill and Williams and L&F or with knowledge that such interference was substantially certain to occur, and was independently tortious or unlawful.

51. Anheuser-Busch's interference with the October 19, 2000 Asset Purchase Agreement and the contractual relationship between Durrill and Williams and L&F was the proximate cause of damage to Durrill and Williams, and they are entitled to all applicable remedies, including compensatory and punitive damages, as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1. The fair market value of Durrill and Williams' distributorship, pursuant to the Texas Beer Industry Fair Dealing Law, Alcohol and Beverage Code 102.77, as of the date Anheuser-Busch violated the Texas Beer Industry Fair Dealing Law, which was then no less than the value of that consideration agreed to by L&F in the October 19, 2000 Asset Purchase Agreement,

2. Compensatory and/or statutory damages in any instance allowed by law,

3. Exemplary damages in any instance allowed by law,

4. Reasonable attorney's fees and costs,

5. Prejudgment and post-judgment interest as provided by law,

6. Costs of suit, and

7. Such other and further relief to which Plaintiffs may be entitled.

## JURY DEMAND

Plaintiffs demand a jury in this action.

Respectfully submitted,

SORRELL, ANDERSON, LEHRMAN
MAIXNER & RUDOLFO, L.L.P.

By: _____
Andrew Lehrman
Federal Bar No. 329
Texas State Bar No. 12178500
711 N. Carancahua
1200 American Bank Plaza
Corpus Christi, Texas 78475
Telephone: (361) 884-4981
Facsimile: (361) 888-7697


WATTS & HEARD, L.L.P.

By: _____
Martin J. Siegel
Texas State Bar No. 18342125
Mikal Watts
Texas State Bar No. 20981820
815 Walker, 16th Floor
Houston, Texas 77002
Telephone: (713) 225-0500
Facsimile: (713) 25-0566

ATTORNEYS FOR PLAINTIFFS

12